Hyman R. Minkoff, et al. [1] v. Commissioner. Minkoff v. Commissioner
Docket Nos. 35006, 35007, 43220-43225, 43258, 48519, 52251-52256.
United States Tax Court
T.C. Memo 1956-269; 1956 Tax Ct. Memo LEXIS 27; 15 T.C.M. (CCH) 1404; T.C.M. (RIA) 56269; November 30, 1956
*27 1. From 1943 to 1949, inclusive, petitioners, Hyman R. and Abraham R. Minkoff, Isadore J. Weniker, Leon Figoff, and at times, another individual, were partners in the Huntington Rubber Company. The partnership agreements provided that partnership income each year would be allocated by mutual agreement rather than on the basis of any fixed percentage interests owned by the partners. The income each year was so allocated by mutual agreement. Held, respondent erred in reallocating partnership income among petitioners solely on the basis of percentage interests set forth in the partnership agreements. Held, further, respondent erred in determining that petitioners, Hyman R. and Lucia Minkoff and Abraham R. and Beatrice Minkoff, received additional income by virtue of the erroneous charging of their tax payments to the partnership capital account of Isadore J. Weniker, which charges were subsequently corrected. Held, further, respondent erred in determining that Hyman R. Minkoff received $25,000 of additional income by virtue of a loan made to him by Abraham R. Minkoff in 1947. 2. Huntington normally depreciated its machinery and equipment on a composite, straight-line method at 10 *28 per cent per year. During 1946, 1947, and 1948, it claimed accelerated depreciation of 20 per cent because of excess use of such machinery and equipment. Held, petitioner failed to prove that the life of the machinery and equipment was materially lessened by such excess usage, and respondent properly disallowed the accelerated depreciation deductions claimed. 3. Hyman R. Minkoff, on behalf of Huntington, entered into the business of buying and selling the entire 1946 crop of chili peppers grown by an association of Mexican farmers. Huntington sustained losses on such venture which it claimed on its returns as net operating losses for the fiscal years ended April 30, 1947 and 1948. Held, respondent erred in disallowing losses sustained by Huntington from its chili pepper business during such years. 4. Huntington retained Norman Obrand as counsel during its fiscal year ended April 30, 1947, and paid him $1,000 for legal fees. Held, respondent erred in disallowing a deduction for such amount paid as legal fees. 5. In 1944, Hyman R. and Lucia Minkoff made contributions to charity in the total amount of $3,807.65. Held, the respondent erred in disallowing the deduction of a part of *29 such sum as charitable contributions. 6. From 1944 to 1949, Hyman R. Minkoff was in the business of lending money for profit. Held, the respondent erred in determining that bad debts, deducted by Hyman R. and Lucia Minkoff on their returns in 1946 and 1947, were nonbusiness bad debts rather than business bad debts. Held, further, Hyman R. Minkoff sustained a deductible loss in the amount of $44,712.50 in 1948 for business debts which became worthless in that year. 7. Held, no part of any of the deficiencies here in issue was due to fraud with intent to evade tax. 8. Held, no part of any of the deficiencies here in issue was due to negligence or intentional disregard of rules and regulations. 9. Held, petitioners failed to show that the respondent erred in determining additions to tax for their substantial underestimate of estimated tax. George M. Bryant, Esq., 17 Rowan Building, Los Angeles, Calif., for the petitioners. R. E. Maiden, Jr., Esq., for the respondent. RICE
Memorandum Findings of Fact and Opinion These consolidated proceedings involve the following deficiencies in income tax and additions thereto: Additions to Tax
Docket No.
Petitioner
Year
Deficiency
Sec. 293(b)
Sec. 294(d)(2)
43224
Hyman R. Minkoff
1944
$12,026.82
$ 6,013.41
0
35006 *
Hyman R. Minkoff
1945
26,189.58
13,094.79
$2,706.21
43224
Hyman R. Minkoff
1946
22,830.02
11,415.01
3,181.15
43224 *
Hyman R. Minkoff
1947
64,519.65
32,259.83
4,273.55
52252 *
Hyman R. and Lucia Minkoff
1948
49,593.56
24,796.78
2,964.24
43225
Lucia Minkoff
1944
11,991.82
5,995.91
0
35007 *
Lucia Minkoff
1945
26,189.58
13,094.79
2,706.21
43225
Lucia Minkoff
1946
22,445.28
11,222.64
3,158.07
43225 *
Lucia Minkoff
1947
33,167.28
16,583.64
2,392.41
43221
Abraham R. Minkoff
1946
33,211.62
16,605.81
2,423.91
43222
Beatrice Minkoff
1946
33,316.12
16,658.06
2,447.00
43258 *
Abraham R. and Beatrice Minkoff
1947
81,691.90
40,845.95
4,901.51
52251
Abraham R. and Beatrice Minkoff
1948
24,173.34
12,086.67
1,469.74
48519
Abraham R. and Beatrice Minkoff
1949
5,032.70
2,516.35
0
43223 *
Isadore J. Weniker
1947
2,078.63
1,039.32
155.78
43220 *
Rose Weniker
1947
2,078.63
1,039.32
155.78
52253
Isadore J. and Rose Weniker
1948
1,414.68
707.34
116.74
52254
Leon Figoff
1947
93.00
46.50
5.58
52255
Leon Figoff
1947
139.72
69.86
26.70
52256
Leon Figoff
1948
134.00
67.00
14.40
*30 The issues to be decided are: (1) Whether the percentage distribution of partnership income as reported by the petitioners on their returns correctly reflected their true percentage interest in partnership income during the years in issue; (2) whether petitioners, Hyman R. and Lucia Minkoff and Abraham R. and Beatrice Minkoff, received additional income in 1947 by virtue of the charging of their tax payments during such year to the partnership capital account of Isadore J. Weniker, which charges were subsequently changed and charged to the respective partnership accounts of Hyman R. and Abraham R. Minkoff; (3) whether petitioner, Hyman R. Minkoff, received additional income by virtue of an alleged loan of $25,000 made to him in 1947 by Abraham R. Minkoff; (4) whether the partnership, Huntington Rubber Company, was entitled to an accelerated depreciation deduction on machinery and equipment during its fiscal years ended April 30, 1946, 1947, and 1948; (5) whether the partnership, Huntington Rubber Company, sustained net operating losses for its fiscal years ended April 30, 1947 and 1948 from dealings in chili peppers; *31 (6) whether the partnership, Huntington Rubber Company, incurred and paid a legal fee of $1,000 during its fiscal year ended April 30, 1947; (7) whether the respondent erred in disallowing a part of the contributions claimed by petitioners, Hyman R. and Lucia Minkoff, on their 1944 returns; (8) whether bad debts claimed by petitioners, Hyman R. and Lucia Minkoff, on their returns for 1946 and 1947 were business or nonbusiness bad debts; (9) whether petitioners, Hyman R. and Lucia Minkoff, sustained deductible bad debt losses of $44,712.50 in 1948; and (10) if so, whether such bad debts were business or nonbusiness in character; (11) whether any part of the deficiencies in Docket Nos. 43224, 52252, 43221, 43258, 52251, and 48519 was due to fraud with intent to evade tax; (12) if not, whether any part of the deficiencies in Docket Nos. 43224, 52252, 43221, and 43258 was due to negligence or intentional disregard of rules and regulations; (13) whether any part of the deficiencies in Docket No. 43223 was due to negligence or intentional disregard of rules and regulations; and (14) whether the respondent erred in imposing additions to tax for substantial underestimate of estimated tax. *32 Concessions were made with respect to many issues, which will be taken into account in a Rule 50 computation. Some of the facts were stipulated. Findings of Fact The stipulated facts are so found and are incorporated herein by this reference. During the years in issue, Hyman R. and Lucia Minkoff were husband and wife and residents of Glendale, California; Abraham R. and Beatrice Minkoff were husband and wife and residents of Venice, California; Isadore J. and Rose Weniker were husband and wife and residents of Los Angeles, California; Leon Figoff was a resident of Los Angeles, California. The returns of all petitioners were filed with the former collector of internal revenue for the sixth district of California. On April 15, 1943, petitioners, Hyman R. Minkoff, Isadore J. Weniker, Leon Figoff, and another individual, organized a partnership known as the Huntington Rubber Company (hereinafter sometimes referred to as Huntington). During the years in issue, Huntington was engaged in the general tire and rubber business, and, through a subsidiary partnership, in the manufacture and sale of batteries. It kept its books and filed its returns on an accrual basis for a fiscal *33 year ended April 30 during each of the years in issue. Abraham R. Minkoff, Hyman R. Minkoff's brother, became a partner in Huntington as of September 30, 1943, by purchasing one-half of Hyman's partnership interest. The partners' respective interests in the partnership were set forth in various partnership agreements which, in addition to providing specific percentage interests, also provided, in substance, that partnership profits at the end of the year would be divided upon a mutually agreeable basis irrespective of the percentage interest set forth in the agreements. The partners, in fact, each year divided the profits by mutual agreement, and the percentage division thereof varied considerably from the percentage interests set forth in the agreements. The partners in each of the years in issue, in fact, received the amounts of the partnership earnings set forth in the partnership information returns and in their individual returns. On the partnership information return for the fiscal year ended April 30, 1944, $109,787.57 was the total reported net income from the business. It was divided among the partners as follows: Hyman R. Minkoff
$54,447.01
I. J. Weniker
6,705.32
A. Castaneda
17,105.32
Leon Figoff
9,549.54
A. R. Minkoff
21,980.38
*34 From April 30, 1943 to September 30, 1943, the respective partnership interests set forth in the agreements were as follows: Hyman R. Minkoff
79.81%
I. J. Weniker
8.93%
A. Castaneda
8.93%
Leon Figoff
2.33% From September 30, 1943 to April 30, 1944, the partners' respective interests set forth in the agreements were as follows: Hyman R. Minkoff
39.905%
A. R. Minkoff
39.905%
A. Castaneda
8.93%
I. J. Weniker
8.93%
Leon Figoff
2.33%
In determining the deficiencies for 1944, the respondent reallocated 79.81 per cent of five-twelfths and 39.905 per cent of seven-twelfths of partnership income to Hyman R. Minkoff. In determining the deficiencies herein, for years other than 1944, the respondent reallocated the distribution of partnership profits on the basis of the percentage interests set forth in the agreements applicable to such years. The returns of the partners correctly and accurately reflected their percentage interest in the profits of the partnership during each of the years in issue. In 1947, the tax payments of Hyman R. and Lucia Minkoff, Abraham R. and Beatrice Minkoff, and Leon Figoff and his wife, which were made by checks *35 drawn on Huntington's bank account, were charged to the capital account of Isadore J. Weniker. Such charges were erroneously made by an assistant bookkeeper. They were subsequently corrected and charged to the proper capital accounts. In determining the deficiencies herein, the respondent added the amount of such erroneous charges to the income of Hyman R. and Lucia Minkoff and Abraham R. and Beatrice Minkoff for the year 1947. The erroneous charging of their tax payments in that year to the capital account of Isadore J. Weniker did not constitute additional income of the Minkoffs. In 1947, Abraham R. Minkoff withdrew $25,000 from his capital account in Huntington; deposited such sum in his personal bank account; and, subsequently, drew a check payable to his brother, Hyman R. Minkoff, who deposited such check in Huntington's bank account and received a credit to his capital account in like amount. Hyman executed a note payable to Abraham in the amount of $25,000. Respondent determined that Hyman R. Minkoff received $25,000 of additional income from that transaction in 1947. Such sum was a loan from Abraham to Hyman and did not constitute additional income to Hyman in 1947. *36 Huntington used a composite, straightline method of depreciating its machinery and equipment. The normal annual rate of depreciation was 10 per cent. During 1946, 1947, and 1948, it claimed depreciation of 20 per cent on the ground that its machinery and equipment was used 24 hours per day during those years. In the deficiency notices, the respondent determined that the partnership was entitled to depreciate its machinery only at a 10 per cent rate. In November 1946, Hyman R. Minkoff was approached by J. A. Knapp with the proposition that they jointly purchase and sell the annual crop of Mexican chili peppers from an association of Mexican farmers who grew the peppers. Knapp had already contracted with the association for the purchase of the crop. Hyman did not wish to enter into a partnership with Knapp but agreed to, and did, lend him $100,000 upon Knapp's promise to pay him $30,000 of the profits to be realized from the sale of the peppers. Within a period of two weeks time after making the loan, it was necessary for Hyman R. Minkoff, on behalf of Huntington, actively to enter the business of buying and selling the crop of chili peppers. The purchase agreement was assigned to *37 him by the Mexican farmers association, and for the next two years. Huntington was actively engaged in marketing the chili peppers and performing all other functions incident thereto. On the information returns which Huntington filed for its fiscal years ended April 30, 1947 and 1948, it claimed net operating losses from its dealings in chili peppers, which losses the respondent disallowed in determining the deficiencies here in issue. Huntington was actively engaged in the business of buying and selling chili peppers during its fiscal years ended April 30, 1947 and 1948. It sustained net operating losses from such business of $129,347.02 and $28,517.23, respectively, in those years. During its fiscal year ended April 30, 1947, and for many years prior thereto, Huntington had retained Norman Obrand as counsel. During that fiscal year, it paid him a fee of $1,000, which sum was deducted in computing its net income for such year. In determining the deficiencies herein, respondent disallowed such deduction. In 1944, petitioners, Hyman R. and Lucia Minkoff, made deductible contributions to charity in the amount of $3,807.65. In determining the deficiencies herein, respondent disallowed *38 $1,976.31 of such claimed amount. During the five-year period from 1944 to 1949, petitioner, Hyman R. Minkoff, made more than 40 individual loans to various persons, totalling over $300,000. Many of the loans carried interest at 5 1/2 or 6 per cent and were secured by mortgages, deeds of trust, or other forms of security. On their returns for 1946 and 1947, petitioners, Hyman R. and Lucia Minkoff, claimed deductions for business bad debts in those years as the result of loans which Hyman R. Minkoff had made to three individuals. The respondent determined that such debts were nonbusiness in character and, accordingly, reduced the amount of the allowable deduction for bad debts. On their return for 1948, Hyman and Lucia claimed deductions for business bad debts as follows: Howard and Emily Walters
$ 6,600.00
Joseph Singer
7,112.50
George Gordon
15,500.00 The respondent disallowed the entire amount of the deductions either as business or as nonbusiness bad debts. In their petition, petitioners claimed that the worthless debt of George Gordon should have been claimed in the amount of $31,000. Petitioner, Hyman R. Minkoff, was in the business of lending money for *39 profit in 1946, 1947, and 1948. Debts owed to him in 1948 in the total amount of $44,712.50 became worthless in that year. No part of any of the deficiencies here in issue was due to fraud with intent to evade tax, nor to negligence or intentional disregard of rules and regulations. Opinion RICE, Judge: This record is far from satisfactory. We have done the best we could with it, and if dissatisfaction results, the parties have no one to blame but themselves. That is not to say that the Court is indifferent to the results reached or would not turn its hand in the interest of justice to assist one party or the other where possible. But it is, of course, the contestants themselves who, throughout, carry the burden of adequately pleading and presenting their respective cases. This case came here with allegations of fraud against all of the petitioners. At the opening of the hearing, the respondent conceded that there was no fraud as to the wives in the years when they had filed individual returns, and later he conceded there was no fraud as to some of the other dockets. As to the remaining allegations of fraud, he amended his answers in some of the dockets to ask that the negligence *40 penalty be imposed in the event the Court found no fraud. He also amended his answer in Docket No. 43223, claiming the negligence penalty. We are fully satisfied, and have so found as a fact, that no part of any of the deficiencies in these consolidated cases was due to fraud with intent to evade tax. We are similarly satisfied that no part of any of the deficiencies was due to negligence or willful disregard of rules and regulations. The only evidence offered to support either charge was the fact that the tax payments of certain of the partners had been charged to the capital account of Isadore J. Weniker, and the allegation that the $25,000 loan by Abraham to his brother, Hyman R. Minkoff, in 1947, was, in reality, a "kickback" of partnership profits originally distributed to Abraham and the other partners. We found, as a fact, that the charges to Weniker's capital account for the tax payments of the other partners was an error which was subsequently corrected and resulted in no additional income to the partners whose tax payments were so charged. We likewise found that the $25,000 which Abraham paid to Hyman in 1947 was a loan and did not result in additional income to Hyman. *41 We find no evidence supporting the respondent's allegation that such sum represents a "kickback" of partnership profits from the other partners. The respondent reallocated the distributable shares of the petitioners' partnership income on the basis of that provision of the partnership agreements which set forth the specific percentage interests owned by the respective partners. We think that determination was clearly arbitrary and without foundation in fact. Each of the partnership agreements contained an additional provision that the partners would divide the profits at the end of the year on a mutually agreeable basis, irrespective of their percentage interests set forth in the agreements, which is what, in fact, they did. We find no reason whatsoever for disregarding the percentage distributions reflected in the partnership and individual returns. Any additional amounts of partnership income resulting from these proceedings must be allocated on the basis of the percentage distribution reflected in the returns as filed. With respect to the year 1944, the respondent determined that petitioner, Hyman R. Minkoff, received 79.81 per cent of five-twelfths and 39.905 per cent of seven-twelfths *42 of the partnership's income for its fiscal year ended April 30, 1944. This determination was made on the theory that Abraham R. Minkoff did not purchase one-half of Hyman's partnership interest until September 30, 1943, and that any amount in excess of 39.905 per cent of seven-twelfths of partnership income which he received would amount to an assignment by Hyman of a part of his share of partnership income. The respondent's determination also assumes that the partnership's income was earned in equal amounts during each of the 12 months of its fiscal year. As noted in our findings of fact, Hyman received approximately 50 per cent of the partnership's profits for its fiscal year ended April 30, 1944, and Abraham received approximately 20 per cent. The partners distributed the income in that year, as in later ones, without regard to the percentage interests set forth in the partnership agreement. The fact that Hyman, in that year, received two and one-half times the amount which Abraham received, convinces us that the partners took into consideration, in distributing the income, the fact that Abraham was a partner for only seven months. We do not believe that there was an assignment *43 by Hyman of income earned by him to his brother, Abraham. The distribution of partnership income as reported on the returns in that year correctly reflected the percentage amounts to which the partners were entitled. The partnership claimed accelerated depreciation on its machinery and equipment in 1946, 1947, and 1948 on the ground that the machinery was used on a 24-hour basis during those years. The mere fact that machinery and equipment is used more than might normally be the case does not, in and of itself, establish a taxpayer's right to accelerated depreciation in the absence of a specific showing that the life expectancy of the machinery was materially reduced by the excessive usage. ; , affd. on this issue (C.A. 4, 1952); ; . We think the petitioners failed to prove that they were entitled to use an accelerated depreciation rate during 1946, 1947, and 1948, and respondent's disallowance of the accelerated depreciation *44 claimed during such years was proper. We found, as a fact, that Hyman R. Minkoff, acting in behalf of Huntington, put it into the chili pepper business late in 1946, and that for its fiscal years ended April 30, 1947 and 1948, the partnership sustained net operating losses from such business venture. We have not set forth in detail the voluminous facts with respect to this transaction for the reason that there is little dispute between the parties as to the facts themselves, but only as to their interpretation of what those facts establish. The respondent's position is that the substance of the entire transaction was a loan to Knapp by the partnership. With that position we do not agree. We think it clear that the substantial activity on the part of Hyman R. Minkoff and other employees of Huntington over a considerable period of time establishes that Huntington was actively engaged in the chili pepper business during the period in question. It is therefore entitled to claim deductions for the net operating losses of that business in the amounts set forth in our findings of fact. We found as a fact that Huntington incurred and paid legal fees to Norman Obrand in the amount of $1,000 *45 during its fiscal year ended April 30, 1947. The respondent disallowed a part of the contributions claimed by petitioners, Hyman R. and Lucia Minkoff, on their return for 1944. On the basis of the testimony of Hyman and other witnesses, we are satisfied, and have found as a fact, that he and Lucia made total deductible contributions as claimed on their return in the amount of $3,807.65. By virtue of the substantial number and amounts of loans which Hyman R. Minkoff made from 1944 to 1949, we found that he was in the business of lending money for profit, and that the bad debts claimed by him and Lucia on their returns for 1946 and 1947 were deductible as business bad debts We also found that three other debts became worthless in 1948 and deductions therefor are allowable as business bad debts. . The petitioners offered no evidence establishing error in the respondent's determination of additions to tax for substantial under-estimate of estimated tax, and such additions, where applicable upon a final computation of the deficiencies herein, are approved. On brief, petitioners argue that Huntington sustained a deductible loss in 1948 *46 from a transaction in Mexican pesos which was directly related to its chili pepper business, and also that Hyman R. Minkoff reported more than his share of the capital gain on a land transaction in 1947. These items cannot be considered as they were not put in issue by the pleadings. Decisions will be entered under Rule 50. Footnotes
1. The following proceedings have been consolidated: Hyman R. Minkoff, Docket No. 35006; Lucia Minkoff, Docket No. 35007; Rose Weniker, Docket No. 43220; Abraham R. Minkoff, Docket No. 43221; Beatrice Minkoff, Docket No. 43222; Isadore J. Weniker, Docket No. 43223; Hyman R. Minkoff, Docket No. 43225; Abraham R. Minkoff and Beatrice Minkoff, Docket No. 43258; Abraham R. Minkoff and Beatrice Minkoff, Docket No. 48519; Abraham R. Minkoff and Beatrice Minkoff, Docket No. 52251; Hyman R. Minkoff and Lucia Minkoff, husband and wife, Docket No. 52252; Isadore J. Weniker and Rose Weniker, husband and wife, Docket No. 52253; Leon Figoff, Docket No. 52255; Leon Figoff, Docket No. 52256.↩
*. Deficiency and additions to tax increased by amended answers.↩